# IN THE COURT OF APPEALS OF IOWA

No. 21-1046
Filed October 20, 2021

**IN THE INTEREST OF C.R.,**
**Minor Child,**

**A.T., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

　　　A mother appeals the termination of her parental rights to her child, challenging only the statutory grounds for termination.  **AFFIRMED.**

　　　John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

　　　Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee.

　　　Joseph Kertels of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

　　　Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

As the juvenile court observed in its termination ruling, "[i]t is particularly sad when the court has to make a decision that a parent is beyond help when it comes to learning how to be a safe parent." Despite years of services, that is the case when it comes to Ashley, the mother of one-year-old C.R. We accordingly affirm the termination of her parental rights under Iowa Code section 232.116(1)(h) (2021).

## I. Background Facts and Proceedings

The Iowa Department of Human Services (DHS) has been involved with Ashley and her four children for the past six years. A total of ten child-abuse assessments have been completed. Although many reports were not confirmed, community care services were usually recommended. Most of the assessments concerned Ashley's failure to provide adequate medical care for her children, which sometimes led to their hospitalization. Bed bugs, head lice, and hygiene were a continual problem for the family. As the children aged, they began to show significant developmental and social delays, remaining mostly non-verbal past the stage when they should have been speaking.

DHS implemented voluntary services in October 2019. Yet concerns for the children's health and safety remained. The three oldest children were removed from Ashley's care and placed into foster care together in early 2020. Ashley was pregnant with C.R. and homeless at the time. She believed C.R.'s father was a man named Jack, but paternity testing later showed that was not the case.

Ashley and Jack, who is not a father to any of her children, have been in an off-and-on relationship for several years. Jack has a long history of substance

abuse and criminal activity, including domestic violence. He has been diagnosed with depression, anxiety, bipolar disorder, and schizophrenia. During the case, he tested positive for amphetamine, methamphetamine, hydrocodone, oxycodone, and THC metabolite. He refused to participate in substance-abuse treatment. Ashley continued her relationship with Jack, despite being warned that it could lead to termination of her parental rights.

In September 2020, Ashley gave birth to C.R. To allow C.R. to remain in her care, she signed a safety plan with DHS agreeing that Jack could neither be alone with C.R. nor visit her apartment, and she could not visit his. It was not long before she violated the plan. By early November, workers assigned to her case began to suspect that she was spending time at Jack's apartment again. Ashley admitted that was true. Given her noncompliance, the juvenile court removed C.R. from Ashley's care and placed him in foster care with his half-siblings. From then on, Ashley's visits never progressed beyond fully supervised.

The court terminated Ashley's parental rights to the three oldest children in April 2021 and returned custody to their fathers.[1] C.R. remained in foster care. Three months later, the court terminated Ashley's parental rights to C.R. under Iowa Code section 232.116(1)(d) and (h).[2] Ashley appeals.

---

[1] We summarily affirmed the termination of Ashley's parental rights to these three children in *In re A.T.*, No. 21-0720, 2021 WL 3378851, at *1 (Iowa Ct. App. Aug. 4, 2021).

[2] Ashley's husband, as the legally established father of C.R., consented to the termination of his parental rights. And C.R.'s biological father's rights were terminated pursuant to section 232.116(1)(b), (d), and (h). Neither has appealed.

## II.    Analysis

Our review of termination proceedings is de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). An order terminating parental rights will be upheld if there is clear and convincing evidence of the statutory grounds for termination. *Id.* at 523. We use a three-step analysis to review the termination of a parent's rights, which begins with whether the grounds for termination have been established. *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).

Ashley challenges just this first step, claiming the State failed to prove termination was appropriate under section 232.116(1)(d) and (h). *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020) (stating if a parent does not challenge a step in the analysis, we need not address it). We choose to focus on paragraph (h). *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (noting termination may be affirmed on any ground supported by clear and convincing evidence). Ashley contests the fourth element—whether C.R. could be returned to her care at the present time. *See id.* (interpreting "present time" to mean "the time of the termination hearing"). She argues because she now has a home, is addressing her mental-health issues, and is no longer in a relationship with Jack, C.R. could be returned to her care. We disagree.

Although she was homeless when her three oldest children were removed from her care, Ashley secured an apartment not long after. But she chose not to live there, deciding instead to spend most of her time with her paramour, who had serious untreated mental-health and substance-abuse issues. Plus, Jack had pending criminal charges for assaulting Ashley earlier this year. Despite that incident, Ashley moved to dismiss the no-contact order and told her case worker

that she had no intention of leaving him. Just a few weeks before the termination hearing, Ashley was spending every night with Jack.

The juvenile court accordingly expressed skepticism toward Ashley's claim that she and Jack had broken up, as do we. *See A.S.*, 906 N.W.2d at 472 (giving weight to juvenile court's credibility findings). Throughout the life of this case, she repeatedly put her relationship with Jack above the needs of her children. There was no reason for the court to believe that her priorities had suddenly changed. *In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the parents' past performance and motivations."). Ashley's continued association with Jack, a known drug user, shows C.R. could not be returned to her care at the time of the hearing. *See In re K.L.*, No. 15-0444, 2015 WL 4486182, at *4 (Iowa Ct. App. July 22, 2015).

While Ashley took some steps to address her mental-health needs, they were not significant. She did not obtain a mental-health evaluation until months after it was recommended. She was diagnosed with bipolar disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, and depression. Her treatment plan recommended biweekly therapy sessions. Ashley attended those only a few times. She did undergo a psychiatric evaluation in November 2020 and attended monthly medication management sessions. But she never obtained a psychological evaluation despite recommendations to do so given her reported intellectual disability.

Ashley engaged in other services, like parenting classes, but she did not seem able to fully internalize the lessons. Her family-centered services provider had to remind Ashley numerous times to support C.R.'s head when he was an

infant. Ashley's solution when C.R. was fussy was to feed him even after he had already eaten. Once, Ashley left C.R. in the care of a neighbor whom she barely knew.

The record shows that after years of services, Ashley still could not care for C.R. without ongoing DHS involvement. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *Id.* (alteration in original) (quoting *D.W.*, 791 N.W.2d at 707). Here, that statutory timeframe is six months. Iowa Code § 232.116(1)(h). C.R. has been out of Ashley's care for most of his young life. He needs and deserves permanency, which can be provided to him in the pre-adoptive foster home placement. For these reasons, we affirm the termination of Ashley's parental rights.

**AFFIRMED.**